# <u>EXHIBIT 2</u>

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 14-2531H

Harvard Street Neighborhood
Health Center, Inc. , Plaintiff(s)

v.

Hartford Fire Ins. Co. , Defendant(s)

## SUMMONS

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

To the above-named Defendant:

You are hereby summoned and required to serve upon Steven J. Torres and Kate S. Swartz of Torres, Scanlon & Day, LLP plaintiff's attorney, whose address is 35 India St., Boston, MA 02110 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the ___19th___ day of
___August___ , in the year of our Lord two thousand ___14___ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on _____, 201___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____,201____.        _____

N.B.   **TO PROCESS SERVER: –**
       **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
       **THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

_august 19_      ,201_4_.

**Commonwealth of Massachusetts**

SUFFOLK, ss.        SUPERIOR COURT DEPARTMENT
                    OF THE TRIAL COURT
                    CIVIL ACTION
                    No. _____

_____, Plff(s).

v.

_____, Deft(s).

**SUMMONS**
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF   SUFFOLK | DOCKET NO. 14-2531 H |
|---|---|---|

| PLAINTIFF(S) Harvard Street Neighborhood Health Center | DEFENDANT(S) Hartford Insurance Company |
|---|---|

| Plaintiff Atty | Steven J. Torres and Kate S. Swartz | Type Defendant's Attorney Name | |
|---|---|---|---|
| Address | 35 India St., Floor 4 | Defendant Atty | |
| City | Boston   State MA   Zip Code 02110 | Address | |
| | | City | State   Zip Code |
| Tel. | +1 (617) 307-4426   BBO# 648,616 | | |

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)   TRACK | IS THIS A JURY CASE? |
|---|---|---|
| A99 Other (specify ) - Fast Track | | ( ] Yes   ( ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1.  Total hospital expenses                                $_____
   2.  Total doctor expenses                       $_____
   3.  Total chiropractic expenses           $_____
   4.  Total physical therapy expenses     $_____
   5.  Total other expenses (describe)      $_____
                                             Subtotal $_____

B. Documented lost wages and compensation to date $_____
C. Documented property damages to date $_____
D. Reasonably anticipated future medical expenses $_____
E. Reasonably anticipated lost wages and compensation to date $_____
F. Other documented items of damages (describe) $_____

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                         Total $_____

RECEIVED

AUG 0 8 2014

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Please see attached sheet          **TOTAL**   $2,762,920

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

Harvard Street v. McKenzie & Company, Suffolk County, Civil Action No. 2014-0641-E

I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Signature of Attorney of Record _____   Date:   Aug 6, 2014

A.O.S.C. 3-2007

Beginning in 2003 and continuing into 2008 Nzeribe McKenzie, an employee of McKenzie & Co., an independent contractor that provided human resource services and payroll processing to the Center, stole roughly $763,000 in funds from Plaintiff (the "Loss"). In April 2013, Plaintiff submitted a claim to Defendant to recover insurance policy proceeds for the Loss under its Commercial Insurance Policies issued by the Defendant.  But while theft is a covered cause of loss under the Plaintiff's coverages with Defendant, Defendant denied Plaintiff's claim.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                        SUPERIOR COURT DEPARTMENT
                                                    OF THE TRIAL COURT

---

HARVARD STREET NEIGHBORHOOD
HEALTH CENTER, INC.,

      Plaintiff,                                CIVIL ACTION NO. 14-2531

      v.

HARTFORD FIRE INS. CO.,

      Defendant.

---

## AMENDED COMPLAINT

Plaintiff Harvard Street Neighborhood Health Center ("Harvard Street" or "The Center")
brings this action against Defendant Hartford Fire Ins. Co. ("Hartford") for, among other things,
breach of contract, violation of General Laws 93A and for a declaratory judgment that Hartford
is required to pay Harvard Street under the insurance policies Hartford issued for the theft of
funds the Center experienced. Beginning in 2003 and continuing into 2008 Nzeribe McKenzie
("Nzeribe"), an employee of McKenzie & Co., an independent contractor that provided human
resource services and payroll processing to the Center, stole roughly $763,000 in funds from
Harvard Street (the "Loss"). The fact that Nzeribe stole from the Center and the elaborate
scheme by which he stole the funds is well-established as Nzeribe pled guilty to 18 criminal
counts of both larceny and falsifying the Center's books and records and served roughly two
years in prison as a result of his guilty plea in his criminal case – Suffolk Superior Court
Criminal Docket No. SUCR–10449.

In April 2013, Harvard Street submitted a claim to Hartford to recover the Loss under its Commercial Insurance Policies with Hartford.  But while theft is a covered cause of loss under the Center's coverages with Hartford, Hartford denied the Center's claim asserting that the theft was not covered because, among other things, "money" is not considered to be covered under the policy.  As that contention and the various other grounds Hartford relies upon in denying coverage for the Loss are not supportable, and instead, are directly contravened by the policy language and factual record that exists here, Harvard Street brings this action seeking to recover for the Loss it incurred from Nzeribe's theft.

## PARTIES

1.      Plaintiff Harvard Street is a Massachusetts non-profit provider of medical and related services, with a principal place of business at 632 Blue Hill Avenue, Dorchester, MA.

2.      Upon information and belief Defendant Hartford Fire Ins. Co. is an insurance company that at all times material hereto, conducts insurance business within the Commonwealth and underwrites insurance risks located within the Commonwealth.

## JURISDICTION AND VENUE

1.      The Superior Court has original subject matter jurisdiction of this action pursuant to G.L. c. 212, § 4 and G.L. c. 214, § 1.

2.      This Court has personal jurisdiction pursuant to G.L. c. 223A, § 3 because the Defendant transacts business in the Commonwealth of Massachusetts, has made and performed contracts in Massachusetts, underwrites insurance risks in the Commonwealth and has breached duties and committed tortious acts in Massachusetts.

3.      Venue is appropriate in Suffolk County pursuant to G.L. c. 223, §§ 1, 8, because the Loss at issue in this litigation involves loss of business personal property sustained in Suffolk County, for an insurance risk underwritten by the Defendant in Suffolk County.

## FACTS

4.     Harvard Street is a non-profit provider of basic health services to countless vulnerable citizens of the City of Boston.   For decades, Harvard Street has served as the primary provider of such services to thousands of individuals.

5.     Hartford is a national insurance carrier that provides various forms of insurance including but not limited to property, auto, home and business insurance.

### The Loss

6.     On or about January 31, 2001, McKenzie & Co., submitted a proposal to provide Harvard Street with Human Resource Management Services. On or about March 1, 2001, Harvard Street accepted McKenzie & Co.'s proposal with regard to certain tasks including provider credentialing, tracking providers' professional liability renewal dates, maintaining current records of providers' codes, designing and developing a benefit information package, making recommendations regarding dissemination of benefits information to employees, assessing employee benefits programs, tracking employees' training and education activities and creating online access to corporate communications for Harvard Street employees.

7.     By November 19, 2001, McKenzie & Co. also facilitated the processing of Harvard Street's bi-weekly payroll with its separate payroll vendor, documented payroll procedures and reviewed and updated job descriptions for the Center.

8.     McKenzie & Co. was compensated regularly for these services, billing the Center each month for "Human Resource Services" or "Human Resource Management Services" for sums varying from $4,500 to $6,000 per month.

9.     The McKenzie & Co. employee who provided most of the services to Harvard Street was Nzeribe McKenzie ("Nzeribe"). In addition to other duties, Nzeribe carried out the

3

administration and processing of Harvard Street's payroll by collecting data from Harvard Street employees and submitting it to an outside payroll processing firm, ADP. Nzeribe physically worked at the Center 2 – 3 days per week but was at all times material hereto an employee of McKenzie & Co. and was paid by McKenzie & Co.

10.     ADP issued checks to employees as well as to vendors utilized by Harvard Street, based on information provided to it by Nzeribe, and Nzeribe alone.  On information and belief, no other representative of Harvard Street communicated with ADP on Harvard Street's behalf during the time Nzeribe administered and processed the Center's payroll and its payments to vendors.

11.     In 2003 and 2004, Nzeribe issued numerous fraudulent checks to several individuals not entitled to such payments.  Those payments were deposited into Nzeribe's personal accounts, and totaled approximately $46,000.

12.     Between 2003 and 2007, Nzeribe issued numerous checks payable to McKenzie & Co., drawn on Harvard Street's account, and deposited those checks into his personal accounts. These checks totaled approximately $600,000.

13.     In November of 2007, Nzeribe created an entity called McKenzie Acquisitions, LLC ("McKenzie Acquisitions").  The stated purpose of McKenzie Acquisitions was real estate acquisition.

14.     On information and belief, Nzeribe opened a bank account in the name of McKenzie Acquisitions.  Between December 2007 and March 2008, Nzeribe issued payments totaling approximately $100,000 from Harvard Street's account to McKenzie Acquisitions, and deposited them in the corporate bank account.

4

15.     On information and belief, McKenzie Acquisitions never acquired any real estate and was created for the sole purpose of embezzling funds from Harvard Street.

16.     To conceal and facilitate his embezzlement, Nzeribe altered or destroyed certain business records of Harvard Street, including reports transmitted from ADP to Harvard Street that reflected the stolen funds.

17.     During all times that he was embezzling funds from the Center, Nzeribe was working for McKenzie & Co. and deployed at Harvard Street in conjunction with the contract under which McKenzie & Co. was to provide various services to Harvard Street.

18.     In the spring of 2008, Nzeribe became special assistant to Harvard Street's then CEO, Joscelyn Evering.  At that time, McKenzie & Co. ceased providing payroll processing and related services to Harvard Street and Nzeribe became a Harvard Street employee.

19.     After Nzeribe began his new job at the Center, his successor in the payroll department discovered significant discrepancies in the payroll books and records previously maintained by Nzeribe in conjunction with McKenzie & Co., and alerted Harvard Street's senior management.

20.     In November of 2008, an outside auditor retained by Harvard Street revealed that dozens of unauthorized payments were made by Harvard Street in 2007 and 2008, including payments of over $100,000 to McKenzie Acquisitions.

21.     Until its outside auditor completed its work, Harvard Street could not reasonably have known of Nzeribe's actions or McKenzie & Co.'s breach of its contract with Harvard Street.

22.     Harvard Street promptly notified the appropriate authorities of its auditor's findings. The authorities fully investigated the matter and uncovered the total of $762,929 embezzled by Nzeribe from the Center.

23.     In total, Nzeribe embezzled roughly $762,929 in funds from Harvard Street.

24.     On January 20, 2012 Nzeribe pled guilty to multiple counts of Larceny over $250 in violation of Gen. L. c. 266, §30 and False Book Entries in violation of Gen L. c. 266, §67. He was sentenced to 2-3 years in state prison and ordered to pay restitution to Harvard Street in the amount of the $762,929 he embezzled, while working as an employee of McKenzie & Co.

25.     On information and belief, Nzeribe was released from prison within the last six months and is currently on probation.

26.     To date, however, Nzeribe has not returned the funds he stole from the Center nor paid the restitution he has been ordered to pay upon his release.

**The Policies**

27.     Harvard Street purchased commercial insurance coverage with Hartford through three separate policies:

- Policy No. 08-UUQ-UF8385, effective 6/28/2005 to 6/28/2006;
- Policy No. 08-UUQ-UF8385, effective 6/28/2006 to 6/28/2007; and
- Policy No. 08-UUQ-AB5678, effective 6/28/2007 to 6/28/2008

These three insurance contracts will be referred to collectively as the "Policies."

28.     All three Policies provide coverage for "Theft," defined as "any act of stealing."

29.     Under the Policies' Property Choice Coverage Form, the Policies state that Hartford "will pay for direct physical loss of or direct physical damage to the following types of

6

Covered Property" which include "Business Personal Property" defined as "[a]ll of Your

Business Personal Property owned by your business . . ."

    30.    The Property Choice Coverage Form lists in part the following as "Property Not

Covered":

> a.  Accounts, except as covered under the Accounts Receivables
> Additional Coverage, bills, currency, food stamps or other
> evidences of debts, 'money', notes or 'securities'. Lottery
> tickets held for sale are not 'securities'.

    31.    "Money" has a specific definition within the Policies and is defined as "a.

[c]urrency, coins and bank notes; and b. [t]ravelers checks, register checks and money orders

held for sale to the public."

    32.    The Policies' Property Choice - Covered Caused of Loss and Exclusions Form,

provides the following exclusions, among others:

> B.    Specific Exclusions:
>
> 1.    Accounting Errors
>
> > We will not pay for loss or damage caused by,
> > resulting from, or arising out of error or omissions
> > in accounting, arithmetical, bookkeeping or billing,
> > and
>
> 6.    Dishonest Acts
>
> > a. We will not pay for loss or damage caused by,
> > resulting from, or arising out of dishonest or
> > criminal acts by you, any of your partners,
> > members,   officers,   trustees,   authorized
> > representatives or anyone else to whom you entrust
> > the property for any purpose:
> > > (1) Acting alone or in collusion with others;
> > > or
> > > (2)   Whether or not occurring during the
> > > hours of employment.

7

b. In this Exclusion, your employees include leased and contracted employees and software contractors...

24. Unauthorized Transfer of Property

We will not pay for the loss caused by, resulting from, or arising out of the transfer of property that has been transferred to any person or to any place outside your premises on the basis of unauthorized instructions.

## Harvard Street Submits a Claim to Hartford for the Loss

33.    On or about April 19, 2013, Harvard Street submitted a claim to Hartford for the Loss, seeking payment for the $762, 929 in funds stolen from Harvard Street by Nzeribe from 2003–2008.

34.    Hartford responded to Harvard Street's claim by letter dated May 21, 2013 and denied the claim in total (the "Denial"). The Denial only addressed the last policy– not any others even though the Loss occurred over five years and Hartford provided coverage to the Center under three separate policies.

35.    The Denial referred Harvard Street to Hartford's Property Choice Coverage Form, PC00100103, page 2 of 17 "Property Not Covered" and indicated that the Loss was not covered because "the policy of insurance that you carry with Hartford Fire Insurance Company does not cover money." The Denial also referred Harvard Street to the Property Choice–Covered Cause of Loss and Exclusions Form's "Specific Exclusions", stating among other things, that "since the individual who is accused of perpetrating this theft was entrusted with access to the account involved the . . . policy exclusion applies."

36.    In its response to the Denial, the Center asked Hartford to address whether or not theft is covered under any of the Policies and also asked Hartford to clarify how the theft at issue

implicated the categories of "Property Not Covered" since the Denial provided little explanation of Hartford's position.

37.     The Center noted that there was no "money" as defined by Hartford implicated by the Loss as no currency, coins or bank notes were taken.

38.     The Center also asserted that the three exclusions Hartford cited in the Denial were also inapplicable, explaining that: (i) the Loss is not an "error or omission" in accounting because there is no question it arises from a theft; (ii) the Loss is not a "dishonest act" of an employee, leased employee or contracted employee as the theft was orchestrated by an outside service provider working for McKenzie & Co.; and (iii) the Loss is similarly not an "unauthorized transfer," but instead a theft caused Nzeribe's embezzlement.

39.     Harvard Street also requested certified copies of Harvard Street's policies with Hartford dating back as far as Harford's coverage for the Center which began on June 28, 2005.

40.     Harvard Street received a certified copy of Policy No. 08-UUQ-AB5678, covering the period from 6/28/07-6/28/08 (the "2008 Policy") but not the other policies. The Center sent a second letter to Hartford (dated March 4, 2014) disputing the Denial based on the terms of the 2008 Policy and requesting (again) all policies Hartford also issued dating back to 2005.

41.     As the Center determined that under the 2008 Policy none of the grounds asserted by Hartford supported its denying the Center coverage for the Loss, Harvard Street in its March 4, 2014 Letter renewed its claim for coverage under the 2008 Policy.

42.     Hartford responded to Harvard Street's March 4th letter on April 8, 2014. Although Hartford represented to Harvard Street that the grounds for its denial were reviewed by Hartford's "Home Office" following Harvard Street's March 4 letter, Hartford's April 8th letter

once again denied Harvard Street's claim and lacked any substantive response to the points

Harvard Street raised in rebutting the grounds for Hartford's Denial.

43.     After finally receiving the additional policies it had requested on multiple

occasions, Harvard Street responded to Hartford by letter dated April 28, 2014. The Center

advised that "theft" was covered under all three Policies and that the four grounds for Hartford's

determination that there is no coverage for the theft the Center experienced were inapplicable

under all of the Policies.

44.     As a result, in the April 28th letter, Harvard Street reiterated what had been

previously conveyed in the March 4, 2014 letter– that the grounds for Hartford's issuing the

Denial set forth in its letter dated May 21, 2013 are incorrect, not supportable and that the Loss

that the Center sustained is a covered loss under the Policies.

45.     In addition, Harvard Street requested that Hartford provide a substantive response

to the points raised in its March 4th letter rebutting the grounds for the Denial and that Hartford

fulfil its obligation to consider the claim under the other two Policies.

46.     Hartford responded with a four sentence letter dated June 4, 2014, stating that its

coverage position remains unchanged. As a result, the Center initiated this action.

## COUNT I
## (BREACH OF CONTRACT)

47.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs

of the Complaint as if fully set forth herein.

48.     As set forth above, the Policies are insurance contracts that are binding and

enforceable with respect to the Center and Hartford.

49.     Hartford breached its contractual obligations to Harvard Street under the Policies by refusing to compensate Harvard Street after it sustained the Loss and submitted a claim for coverage.

50.     As a proximate and foreseeable result of Hartford's breach of its contractual obligations, Harvard Street has suffered substantial damages in an amount to be established at trial.

## COUNT II
## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING)

51.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

52.     A covenant of good faith and fair dealing is implied into every contract in the Commonwealth of Massachusetts.

53.     The covenant requires the parties to remain faithful to their intended and agreed-upon expectations concerning contractual performance and prohibits one party from injuring the other's right to reap the benefits prescribed by the terms of the contract.

54.     The Policies are valid contracts of insurance between Harvard Street and Hartford and thus a covenant of good faith and fair dealing is implied therein to each one of the Policies.

55.     By: (i) wrongfully denying coverage for the Loss under the Policies; (ii) failing to conduct a prompt investigation of the Loss once a claim was submitted; (iii) refusing to consider coverage for the Loss under all of the Policies it issued to the Center; (iv) forcing Harvard Street to institute litigation in order to obtain payment for the Loss; and (v) refusing to pay the Loss without conducting a reasonable investigation, among other breaches, Hartford has violated the implied covenant of good faith and fair dealing.

11

56.     As a result of Hartford's breach of the covenant of good faith and fair dealing the Center has been damaged in an amount to be established at trial.

**COUNT III**
**(VIOLATIONS OF MASS. GEN. LAWS CH. 93A, §§ 2 and 11)**

57.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

58.     G.L. c. 93A, § 2 prohibits unfair and deceptive business practices in trade or commerce.  As an insurer issuing policies covering risks in Massachusetts, Hartford engages in trade and commerce in the Commonwealth.

59.     By: (i) wrongfully denying coverage for the Loss under the Policies; (ii) failing to conduct a prompt investigation of the Loss once the center submitted a claim; (iii) refusing to consider coverage for the Loss under all of the Policies it issued to the Center; (iv) forcing Harvard Street to institute litigation in order to obtain payment for the Loss; and (v) refusing to pay the Loss without conducting a reasonable investigation, among other actions, Hartford engaged in unfair and deceptive business with respect to Harvard Street for which the Center can recover for under G.L. c. 93A, § 11.

60.     Hartford's unfair and deceptive business practices caused damage to the Center in an amount to be determined at trial.

**COUNT VI**
**(DECLARATORY JUDGMENT – G.L. c. 231A)**

61.     Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

62.     An actual controversy exists regarding the settlement of Harvard Street's insurance claim and the insurance coverage afforded by the Policies issued by Hartford.

63.     Among other things, this Court should determine the rights and obligations of the parties under the Policies.

64.     Under G.L. c. 231A, §§ 1 et seq., this Court has jurisdiction to enter a declaratory judgment in this matter declaring the rights and obligations of the parties as requested.

65.     Harvard Street seeks any and all other remedies to which they are entitled under G.L. c. 231A.

WHEREFORE, Harvard Street prays that:

1.     Judgment enter for Harvard Street against Hartford and that Harvard Street be awarded its full damages in the amount of at least $762,929 plus the costs of this action, attorney's fees and prejudgment interest;

2.     Pursuant to Count III, enter judgment in favor of Harvard Street for monies and damages due to the continued and repeated unfair and deceptive acts and practices of the Defendants as provided by G.L. c. 93A, §§ 2, 11;

3.     Award Plaintiffs two or three times the money damages awarded as provided by G.L. c. 93A, §§ 2, 11 plus their attorneys' fees and costs; and

4.     The court grant such other relief as is deems fair and just.

## JURY TRIAL

Plaintiff specifically demands a trial by jury as to all issues so triable.

Respectfully submitted,

HARVARD STREET NEIGHBORHOOD
HEALTH CENTER, INC.

By its Attorneys

Steven J. Torres, BBO #648616
storres@tsdlegal.com
Kate S. Swartz, BBO #684820
kswartz@tsdlegal.com
Torres, Scammon & Day, LLP
35 India Street
Boston, MA  02110
Telephone: (617) 206-4893
Fax: (617) 307-4427

Dated:  August 13, 2014

14